**Affirm in part; Reverse and Remand in part; Opinion Filed May 19, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00359-CV

### IN THE MATTER OF THE MARRIAGE OF
### ASHANTI JOHNSON PYRTLE AND FRANK PYRTLE, III
### AND IN THE INTEREST OF F.P., A CHILD

### On Appeal from the 256th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DF-08-17853

## OPINION

Before Justices Moseley, Francis, and Lang
Opinion by Justice Lang

In the trial court below, appellee Ashanti Johnson Turner[1] sought "enforcement" of an agreed final decree of divorce respecting her and appellant Frank Pyrtle, III. The trial court granted, in part, the relief requested by Turner. In five issues on appeal, Pyrtle challenges the portions of the trial court's order (1) awarding Turner a money judgment in the amount of $88,400 plus interest for "past due mortgage payments" and a "judgment for attorney's fees in the amount of $1,294.00" for services rendered in connection with a separate lawsuit in Florida involving foreclosure of the mortgage on the parties' marital residence; (2) awarding Turner's counsel in this lawsuit a judgment for attorney's fees in the amount of $7,000 "taxed as additional child support"; and (3) ordering Pyrtle's employer to withhold amounts from Pyrtle's

---

[1] The record shows appellee is also known as Ashanti Johnson Pyrtle.

disposable earnings for payment of the attorney's fees awarded to Turner's counsel in this lawsuit.

We decide in favor of Pyrtle on a portion of his fourth issue. Pyrtle's issues are otherwise decided against him. The trial court's order is reversed in part and affirmed in part and this case is remanded to the trial court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Turner filed an "Original Petition for Divorce" in the trial court on October 6, 2008. The parties' agreed final decree of divorce (the "divorce decree") is dated April 21, 2009, and contains several provisions respecting the parties' marital residence, a house in Florida (the "property"). Specifically, the divorce decree provides in part (1) the property shall be sold for a price that is mutually agreeable to Turner and Pyrtle; (2) Pyrtle "shall continue to make all payments of principal, interest, taxes, and insurance on the property during the pendency of the sale" and "shall have the exclusive right to enjoy the use and possession of the premises until closing"; (3) if any net sales proceeds remain after paying the costs of sale and the mortgage indebtedness or liens on the property, "[t]he first $49,000.00 of the net sales proceeds shall be divided, 40% to [Pyrtle], and 60% to [Turner]" and "any amount remaining shall be divided 50/50 between both parties with [Pyrtle] receiving 50% and [Turner] receiving 50%"; and (4) "[i]f there are not net sales proceeds remaining or the net sales proceeds is [sic] not sufficient to pay the closing costs for the sale of the residence, [Pyrtle] shall pay 60% and [Turner] shall pay 40% of the required deficit."

On November 21, 2011, Turner filed a "Petition for Enforcement of Child Support, Medical Child Support, and Property Division" (the "petition") in the trial court. Therein, Turner alleged Pyrtle had, among other things, failed to (1) pay child support, medical support, and medical expenses for the parties' child; (2) reimburse Turner for life insurance on the child;

and (3) share tax refunds as required by the divorce decree. Additionally, Turner stated (1) "[Pyrtle] has failed and refused to sign documents necessary for the [property] to be sold"; (2) "[Pyrtle] was granted the right to live in the residence until sold, and ordered to pay the principal, interest, taxes, and insurance on the property pending sale, but [Pyrtle] has further failed to do so, and the real property is now in foreclosure"; (3) "[t]he order for . . . placing the property on the market for sale, as ordered, is no longer an adequate remedy because of [Pyrtle's] refusal or failure to cooperate and take action necessary to effect a sale of the property, and further causing damage to [Turner's] credit, and loss of the equity in the property due to [Pyrtle's] willful disregard of the court's orders, and failure to maintain payment of the principal, interest, taxes, and insurance on the real property"; (4) "[Turner] has incurred additional attorneys' fees and costs of at least $1294.00 to try and stop a foreclosure of the [property]"; (5) "[Turner] prays that the Court enforce the underlying order to the extent possible, including but not limited to appointing a receiver to take and sell the property in an effort to lessen the monetary loss of the parties" ; (6) "[i]n the alternative, given the time restriction on resolving the real property default issue, [Turner] requests the Court to order equitable relief . . . in order to make [Turner] whole for the amounts owed and not received from [Pyrtle], and for the economic damages done as a result of [Pyrtle's] failures described herein"; and (7) "[Pyrtle] should be ordered to pay reasonable attorney's fees, expenses, and costs, and a judgment should be rendered in favor of the attorney and against [Pyrtle]."

At the hearing on the petition, Turner testified in part that she and Pyrtle had resolved the issues prior to the hearing, with the exception of attorney's fees and "the property division." Turner stated that at the time of the divorce, the mortgage payments on the marital residence were approximately $2,500 per month. She discovered in July 2009 that Pyrtle was not making any payments on the mortgage. She testified Pyrtle told her at that time that he was "entering

–3–

into a loan modification process" and "would not make [the] house note payment until the loan modification process had been completed." According to Turner, several potential buyers made offers on the marital residence subsequent to the parties' divorce, but "[t]he offers did not go through because [Pyrtle] would not sign the offers." Turner stated Pyrtle told her in 2009 that he "would not sign an offer if he had to bring monies to the table." She testified all of the offers on the marital residence would have required her and Pyrtle to "bring money to the table." She stated she "was willing to accept every offer on the home" and did not "do anything to stop any of [the] offers from going through."

Turner testified that at the time the petition in this case was filed, the marital residence had not been "foreclosed on." She and Pyrtle hired a Florida attorney to try to "hold off" foreclosure, but were unsuccessful in doing so. She stated that a judgment of foreclosure was subsequently rendered by a Florida court against the parties for "the entire amount of the mortgage" (the "Florida judgment") and "the only reason the home was foreclosed on was lack of payment."

Turner stated Pyrtle lived in the marital residence for approximately thirty-four months after the divorce without making any mortgage payments. According to Turner, Pyrtle had income from his salary and the sale of mutual funds during that time. Turner testified that a "reasonable fair market" rental value for the marital residence is $2,500 per month and half of that rental value for a thirty-four month period is approximately $42,000. Further, she stated she agreed to pay her attorney in this case an hourly rate of $250 per hour; she paid $1,294 to the Florida attorney hired by her and Pyrtle for services pertaining to "the foreclosure"; the relief sought by her against Pyrtle in this case includes the full amount of the Florida judgment, half of the rental value of the marital residence for the time period in question, and her attorney's fees

–4–

and court costs "in the amount of $8,000.00 plus $1,294.00"; and her requested relief in this case is "fair and equitable."

Additionally, Turner introduced into evidence (1) a copy of the Florida judgment, which is dated November 22, 2011, and states in part that the amount due and owing is $334,830.19 and "[j]urisdiction of this action is retained to enter further orders, as are proper, including, without limitation, a deficiency judgment" and (2) a "time line of events" compiled by Turner, which states in part that on January 27, 2010, Pyrtle informed her he had received correspondence from their mortgage holder stating "the account has been forwarded to a foreclosure attorney" and on November 1, 2011, Pyrtle "agree[d] to hire an attorney in an attempt to avoid foreclosure."

Pyrtle testified he has been employed since August 2004 in a position that pays approximately $76,000 per year. He lived in the marital residence from April 2009 until the time the property was "foreclosed on." Pyrtle stated the divorce decree ordered him to make the mortgage payments on the marital residence, but he made no mortgage payments on the marital residence after April 2009 because "I didn't have enough money to do it based on the priorities that I had." He remarried in November 2011. According to Pyrtle, both he and Turner rejected the offers that were made on the marital residence in 2009. Pyrtle testified the marital residence is currently "listed for sale as a foreclosure sale" and will probably sell for approximately $230,000, which will "leave the deficiency judgment around $104,000.00 or so."

As to attorney's fees, counsel for Turner testified in part as follows:

I'm a licensed attorney since 1982 in the State of Texas. I've incurred a total attorney's fees in this case, prior to preparing for this last hearing, of $6,008.98. I've incurred an additional eight hours for everything that I did yesterday and today in preparing for this hearing.
I'm asking the Court for a total of $8,000.00 in attorney's fees plus the $1,294.00 that my client had to pay to the Florida attorney. My total hours—total attorney's hours are twenty-four total attorney's hours, also have ten hours of

paralegal time at $100.00 an hour and then I also had another four hours of doing research and that type of thing.

During argument, counsel for Turner stated in part, "We're requesting that the Court help through either equity, through what's available to the Court to try to make my client as whole as possible based on Mr. Pyrtle's violation of this court's order." Counsel for Pyrtle argued in part that "all of the relief they're requesting in effect amends, modifies, alters, and changes the division of property" in the agreed final decree of divorce in violation of section 9.007 of the Texas Family Code "and other sections as well."

Following the presentation of evidence and the parties' arguments, the trial court stated in part

> . . . I'm not awarding any fees for today. But I will award $7,000.00 in attorney's fees as child support for the [sic] having to file the enforcement. And being as child support, they're enforceable as child support and I will order that you pay those. It can be recovered any way it can [sic] as child support can. . . .
>
> Regarding this mortgage issue and the house, there is this $334,000.00 plus judgment but of course it does not take into consideration what the house is going to be sold for on the steps of the courthouse when it's liquidated and so there apparently is going to be a deficiency at some point, it has not been determined at this point.
>
> But based on the testimony you should have a [sic] apparently paid 34 payments on this house and had you did [sic] that, the $2600.00 payment was $88,400.00 that you would have paid. Doesn't seem right that you lived there all those months without paying anything.
>
> And this may be a little help, but the Court is going to order that based on your failure to make these payments, the house is now in foreclosure and—the house is in foreclosure and has been foreclosed upon and hence any deficiency that is left over from this sale that you're responsible for the first—for those 34 payments you should have made, which is $88,400.00 and then any other deficiency will be split according to the divorce decree 60/40; sixty to you, sir, and forty to you, ma'am.

As described above, the trial court's order included provisions awarding Turner a judgment against Pyrtle (1) in the amount of $88,400 plus interest "for past due mortgage payments" and (2) "for attorney's fees in the amount of $1,294.00" for services rendered in connection with the foreclosure of the mortgage on the parties' marital residence. Additionally,

–6–

the trial court's order awarded counsel for Turner a judgment against Pyrtle for attorney's fees in the amount of $7,000 "taxed as additional child support" and provided for withholding from Pyrtle's disposable earnings for payment of that judgment. This appeal timely followed.

## II. PYRTLE'S ISSUES

### A. Standard of Review

Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *See, e.g., City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Subject matter jurisdiction challenges cannot be waived and may be raised for the first time on appeal. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000). Ripeness is an element of subject matter jurisdiction and, as such, is subject to de novo review. *Mayhew*, 964 S.W.2d at 928.

Generally, we review the trial court's ruling on a post-divorce motion for enforcement or clarification under an abuse of discretion standard. *DeGroot v. DeGroot*, 369 S.W.3d 918, 921 (Tex. App.—Dallas 2012, no pet.); *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.); *Campbell v. Campbell*, No. 01–10–00562–CV, 2011 WL 2436513, at *2 (Tex. App.—Houston [1st Dist.] June 16, 2011, no pet.) (mem. op.); *but cf. Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013) (applying de novo standard of review to issue of whether attorney's fees were properly awarded as child support). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *DeGroot*, 369 S.W.3d at 922 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Under the abuse of discretion standard, sufficiency of the evidence is not an independent ground of error, but rather is a relevant factor in assessing whether the trial court abused its discretion. *Beck v. Walker*, 154 S.W.3d 895, 902 (Tex. App.—

Dallas 2005, no pet.). In a legal sufficiency review, we consider the evidence in the light most favorable to the court's order and indulge every reasonable inference that supports it. *See, e.g., City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied). A trial judge does not abuse his discretion if some evidence of a substantial and probative character exists to support the decision. *See In re S.E.K.*, 294 S.W.3d at 930.

"When, as in this case, a trial court makes no separate findings of fact or conclusions of law, we draw every reasonable inference supported by the record in favor of the trial court's judgment." *DeGroot*, 369 S.W.3d at 922. We must affirm the trial court's judgment if it can be upheld on any legal theory that finds support in the evidence. *Id.*

### B. Applicable Law

Under the ripeness doctrine, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed "so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Gibson*, 22 S.W.3d at 851–52. Thus, the ripeness analysis focuses on whether the case involves "uncertain or contingent future events that may not occur as anticipated or may not occur at all." *Id.* at 852. "By focusing on whether the plaintiff has a concrete injury, the ripeness doctrine allows courts to avoid premature adjudication, and serves the constitutional interests in prohibiting advisory opinions." *Id.* "A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Id.* In determining ripeness, a reviewing court "may review the entire record to ascertain if any evidence supports the trial court's subject-matter jurisdiction." *Perry v. Del Rio*, 66 S.W.3d 239, 260 (Tex. 2001); *see Gibson*, 22 S.W.3d at 853.

Subchapter "A" of Chapter 9 of the Texas Family Code is titled "Suit to Enforce Decree." *See* TEX. FAM. CODE ANN. §§ 9.001–.014 (West 2006 & Supp. 2013). Pursuant to that subchapter, a party affected by a decree of divorce providing for a division of property may request enforcement of that decree by filing a suit to enforce in the court that rendered the decree. *Id*. § 9.001. Generally, the court that rendered the decree of divorce retains the power to enforce the property division contained therein. *Id*. § 9.002. Specifically, "the court may render further orders to enforce the division of property made in the decree of divorce . . . to assist in the implementation of or to clarify the prior order." *DeGroot*, 369 S.W.3d at 922 (citing TEX. FAM. CODE ANN. § 9.006(a)). The trial court "may specify more precisely the manner of effecting the property division previously made or approved if the substantive division of property is not altered or changed." TEX. FAM. CODE ANN. § 9.006(b). "However, once the trial court's plenary power has expired, the trial court 'may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment.'" *DeGroot*, 369 S.W.3d at 922 (quoting TEX. FAM. CODE ANN. § 9.007(a)). "An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property." TEX. FAM. CODE ANN. § 9.007(a). An order under section 9.007 that amends, modifies, alters, or changes the actual substantive division of property made or approved in a final decree of divorce is "beyond the power of the divorce court and is unenforceable." *Id*. § 9.007(b); *see DeGroot v. DeGroot*, 260 S.W.3d 658, 663 (Tex. App.—Dallas 2008, no pet.) ("section 9.007 of the Texas Family Code is jurisdictional and orders violating its restrictions are void"). "To enforce a division in a divorce decree of specific, existing property, the trial court may order the property to be delivered." *DeGroot*, 369 S.W.3d at 922 (citing TEX. FAM. CODE ANN. § 9.009). Further, "[i]f a party fails to comply with a decree of divorce or annulment and delivery of property awarded in the decree is no longer an adequate

remedy, the court may render a money judgment for the damages caused by that failure to comply." Tex. Fam. Code Ann. § 9.010. Additionally, section 9.014 of the family code provides in part that the trial court "may award reasonable attorney's fees in a proceeding under this subchapter" and "may order the attorney's fees to be paid directly to the attorney." Tex. Fam. Code Ann. § 9.014.

"It has long been the rule in Texas that attorney's fees paid to prosecute or defend a lawsuit cannot be recovered in that suit absent a statute or contract that allows for their recovery." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009). As a general rule, the party seeking to recover attorney's fees carries the burden of proof. *See, e.g., Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892 (Tex. App.—Austin 2010, pet. denied). Whether an award of attorney's fees is reasonable is a fact question. *Id.* Further, reasonableness of attorney's fees must be supported by expert testimony. *Tull v. Tull*, 159 S.W.3d 758, 760 (Tex. App.—Dallas 2005, no pet.); *see also Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 830 (Tex. App.—Dallas 2014, no pet.); *Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W.3d 762, 770–71 (Tex. App.—Dallas 2007, pet. denied). Sworn testimony from an attorney designated as an expert can satisfy this requirement. *See Woodhaven Partners*, 422 S.W.3d at 830. Testimony from a party's attorney about that party's attorney's fees is taken as true as a matter of law if the testimony "is not contradicted by any other witness and is clear, positive, direct, and free from contradiction." *In re A.B.P.*, 291 S.W.3d 91, 98 (Tex. App.—Dallas 2009, no pet.).

One method used by Texas courts to calculate attorney's fees is the "lodestar" method. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 758 (Tex. 2012). In cases in which the lodestar method is applicable, the determination of what constitutes a reasonable attorney's fee involves

two steps. *Id*. at 760. First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. *Id*. The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. *Id*. The court may then adjust the base lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id*. The party applying for an award under the lodestar method bears the burden of proof. *Id*. at 762–63. "To establish the number of hours reasonably spent on the case, the fee application and record must include proof documenting the performance of specific tasks, the time required for those tasks, the person who performed the work, and his or her specific rate." *Id*. at 765; *accord City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013); *Long v. Griffin*, No. 11-1021, 2014 WL 1643271, at *3 (Tex. Apr. 25, 2014). "Moreover, if multiple attorneys or other legal professionals are involved in a case, the fee application should indicate which attorney performed a particular task or category of tasks." *El Apple*, 370 S.W.3d at 763. While an attorney can "testify to the details of his work," the supreme court "encourage[s] attorneys using the lodestar method to shift their fee to their opponent to keep contemporaneous records of their time as they would for their own client." *Montano*, 414 S.W.3d at 736.

Divorce decrees are "construed as a whole to harmonize and give effect to the entire decree." *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003).

### *C. Analysis*

#### 1. Jurisdictional Issues

In his first, second, and third issues, respectively, Pyrtle asserts the trial court (1) "lacked subject matter jurisdiction on the issues alleged as enforcement of property division," (2) "abused its discretion in rendering judgment on an issue not ripe for consideration," and (3) improperly modified the property division contained in the final decree of divorce "by rendering

–11–

a money judgment in favor of [Turner] on her Motion for Enforcement of Property Division."

Because these three issues constitute jurisdictional challenges respecting the trial court's order, we address these issues together.

> As to his first issue, Pyrtle contends in part

> Turner's pleadings are clear that she is seeking economic damages, not the **enforcement** of the terms of the property division contained in the Agreed Final Decree of Divorce between the parties. Turner's claim for damages, not enforcement, resulted in the trial court award of a money judgment in the amount of $88,400.00 plus post-judgment interest in favor of Turner and against Pyrtle. This is not merely a misnomer of pleadings allowing this matter to proceed as authorized by [the Texas Rules of Civil Procedure], but a matter of the substance of the pleadings.
> Turner combined her allegation for "enforcement of property division" with the enforcement of child support for the specific purpose of acquiring subject matter jurisdiction with regard to her damages claim and personal jurisdiction over Pyrtle with the enforcement of child support proper in the [trial court].

(emphasis original) (citations omitted). Additionally, Pyrtle contends (1) sections 9.009 and 9.010 of the Texas Family Code "are not applicable to the allegations for the real property at issue in this case," but rather "apply to the delivery of **personal property and the receipt of payments of money specified in the final decree**" (emphasis original) and (2) Turner's pleadings did not provide "fair notice" to Pyrtle respecting the claims asserted and damages sought.

Turner responds that the trial court "had subject matter jurisdiction over the issues presented." According to Turner, (1) the Texas Family Code "specifically reserves jurisdiction to the trial court that enters a decree of divorce to enforce the decree" and (2) the power to enforce the decree includes "the power to grant money judgments" and "the power to enter orders to clarify and/or assist in the implementation of the property division." Further, Turner asserts in part (1) section 9.010 is not limited to "personal property or the receipt of monies" and (2) because Turner was "damaged by [Pyrtle's] failure to comply with the decree," the trial court was authorized to render a money judgment pursuant to section 9.010 for the failure to comply.

–12–

To the extent Pyrtle's "fair notice" argument can be construed to complain of a defect in the pleadings in this case, the record does not show Pyrtle filed a special exception, or otherwise objected, to the pleadings in the trial court. *See Smith v. Grace*, 919 S.W.2d 673, 678 (Tex. App.—Dallas 1996, writ denied) ("A party waives any defect, omission, or fault in a pleading that is not specifically pointed out by a special exception."). Therefore, any complaint respecting such alleged defect presents nothing for this Court's review. *Id.*; *see also* TEX. R. APP. P. 33.1.

Additionally, we cannot agree with Pyrtle's assertion that section 9.010 is "not applicable to the allegations for the real property at issue in this case." Pyrtle cites no authority for that assertion and we have found none. As described above, section 9.010 states "[i]f a party fails to comply with a decree of divorce or annulment and delivery of property awarded in the decree is no longer an adequate remedy, the court may render a money judgment for the damages caused by that failure to comply." TEX. FAM. CODE ANN. § 9.010. The language of that provision does not, on its face, preclude its application in cases involving allegations respecting real property. Further, section 9.010 has been applied in such cases by other Texas courts. *See Campbell*, 2011 WL 2436513, at *3–4 (trial court did not err by awarding appellant's former wife money judgment pursuant to section 9.010 on her "Motion for Enforcement of Final Decree of Divorce" where appellant failed to comply with provisions of divorce decree requiring him to pay note on certain real property, resulting in foreclosure, and parties thus did not sell that real property and distribute proceeds as directed in divorce decree); *see also In re Bivens*, 393 S.W.3d 893, 898–99 (Tex. App.—Waco 2012, pet. denied) (trial court properly applied section 9.010 in awarding money damages to appellant's former wife where appellant failed to deliver marital residence in good repair as required by divorce decree); *In re Kerr*, No. 14-08-00529-CV, 2009 WL 3000977, at *1–2 (Tex. App.—Houston [14th Dist.] Sept. 22, 2009, no pet.) (mem. op.) (trial court properly awarded appellant's former wife money judgment pursuant to section 9.010 on her

"petition for enforcement of the decree" where appellant failed to comply with provisions of divorce decree requiring him to pay rent during time he stayed in marital residence and enjoining him from damaging marital residence).

The record shows Turner (1) alleged in the petition that Pyrtle failed to comply with the divorce decree and that the provisions of the decree are "no longer an adequate remedy" and (2) requested, in part, that the trial court enforce the divorce decree "to the extent possible" and "lessen the monetary loss of the parties." On this record, we conclude the issues in the petition were within the jurisdiction conferred by the Texas Family Code. *See* TEX. FAM. CODE ANN. § 9.010.

We decide against Pyrtle on his first issue.

In his second issue, Pyrtle argues that because "there had been no determination of the amount, if any, of the deficiency on the mortgage owed by the parties on the Florida property" at the time of the filing of the petition or the time of trial, "the matter was not ripe for consideration." According to Pyrtle,

> Since the amount [of the deficiency] was unknown even at the time of trial, the actual damages or injury to Turner was contingent and/or remote. Turner's injury certainly was not a concrete injury at the time of the filing or at the time of trial. Further, the determination of any actual injury to Turner had to be based on events that had not yet come to pass; this being the actual amount, if any, of the deficiency judgment after the sale of the real property to the highest bidder or other sale.

Additionally, Pyrtle asserts "[t]he trial court conceded in his comments that the Florida judgment 'does not take into consideration what the house is going to be sold for' . . . 'and so there is going to be a deficiency at some point, **it has not been determined at this point**.'" (emphasis original).

Turner responds in part

> The final amount received to pay off any judgment is never finally determined at the time of the court's entry of judgment. Interest accrues until paid and the final

–14–

amount is not known until the judgment is paid in full. Garnishment of assets or payments on a judgment may partially satisfy the judgment leaving the final payoff amount uncertain at the time the judgment is entered. None of these scenarios results in a controversy not being ripe for judgment. Nor does it make an injury remote or speculative. The judgment of foreclosure is final. It is effective against Turner. It affects her credit rating. It subjects her to collection actions. The injury is real and the controversy was ripe for consideration by the trial court.

We disagree with Pyrtle's assertions that "the actual damages or injury to Turner was contingent and/or remote" and "the determination of any actual injury to Turner had to be based on events that had not yet come to pass; this being the actual amount, if any, of the deficiency judgment." As described above, in determining "ripeness," we must consider whether, at the time this lawsuit was filed, the facts were sufficiently developed so that an injury had occurred or was "likely to occur." *Gibson*, 22 S.W.3d at 851–52. The record shows Turner testified that at the time the petition in this case was filed, the marital residence had not been "foreclosed on." However, in addition, the record shows (1) Pyrtle made no payments on the mortgage on the marital residence after April 2009; (2) proceedings pertaining to foreclosure had begun prior to the filing of the petition; and (3) the Florida judgment against both Turner and Pyrtle in the amount of $334,830.19 is dated November 22, 2011, one day after the petition was filed. On this record, we conclude that at the time the petition was filed, the facts were sufficiently developed to show Pyrtle's alleged failure to comply with the terms of the divorce decree was "likely" to result in a concrete injury to Turner, i.e. a foreclosure judgment against her. *See id.*; *see also Campbell*, 2011 WL 2436513, at *1 (involving lawsuit for enforcement of divorce decree filed prior to foreclosure judgment where former husband failed to make payments on note secured by certain real estate as ordered in decree). Accordingly, the fact that the amount of any deficiency judgment Turner might have to pay after the foreclosure sale had not been determined at the time the petition was filed did not preclude ripeness. *See Vanderweyst v. Boudreaux*, No. 01-02-00928-CV, 2003 WL 22255833, at *4 (Tex. App.—Houston [1st Dist.] Oct. 2, 2003, pet. denied)

–15–

(mem. op.) (fact that amount of damages was not yet determined at time of filing did not make plaintiff's claims unripe where record showed "some injury" to plaintiff at that time); *cf. Campbell*, 2011 WL 2436513, at *1-*2 (awarding damages determined after post-filing foreclosure sale in lawsuit for enforcement of divorce decree).

We decide Pyrtle's second issue against him.

In his third issue, Pyrtle contends that "[b]y re-defining how any deficiency is to be paid, the trial court improperly modified, altered, and changed the terms of the property division contained in the final decree of divorce in violation of section 9.007 of the Texas Family Code." Specifically, Pyrtle argues in part

> The trial court rendered an amendment to the decree by making provisions for re-distributing the payment of any deficit with regard to the foreclosure when the final decree made no provisions for that event. The trial court further modified, altered and changed the terms of the property division by requiring Pyrtle to pay the first $88,400.00 of any deficiency, then applying the pro-rata payment of 60/40 to any remaining deficiency.

Turner asserts "[t]he order is not a modification or alteration of the property division," but rather is "essentially a restructuring of the obligations to ensure that Turner was not obligated to pay more than ordered by the decree." According to Turner,

> Requiring Pyrtle to pay the first $88,400.00 of a deficiency is merely affirming the property division. To assess Turner $40,000.00 additional monies in a deficiency judgment (40% of $88,400.00), without taking into account Pyrtle's non-compliance would significantly modify the property division. It would require Turner to pay 40% of what Pyrtle was ordered to pay. By making Pyrtle responsible for the monies he was ordered to pay and failed to do so, the trial court was implementing the entirety of the property division. To do otherwise would allow Pyrtle to avoid his responsibility for violating the court order and the consequences of his flagrant disregard of the court's order.

The parties do not dispute that the terms of the decree respecting the marital residence are unambiguous. The decree (1) states in part that Pyrtle "shall continue to make all payments of principal, interest, taxes, and insurance" on the marital residence until it is sold and (2) provides specific directions for distribution of net sales proceeds and payment of closing costs in the event

–16–

such costs exceed net sales proceeds. However, the decree is silent as to any default by Pyrtle respecting the payments described above. The trial court's order from which appeal was taken in this case included a money judgment to Turner in the amount of $88,400.00 plus interest "for past due mortgage payments."

As described above, (1) divorce decrees are "construed as a whole to harmonize and give effect to the entire decree," *see Shanks*, 110 S.W.3d at 447, and (2) "[i]f a party fails to comply with a decree of divorce or annulment and delivery of property awarded in the decree is no longer an adequate remedy, the court may render a money judgment for the damages caused by that failure to comply." TEX. FAM. CODE ANN. § 9.010. The record shows Pyrtle did not comply with the portion of the property division in the decree requiring him to make the payments described above. Therefore, the trial court had the authority to reduce the property division made in the divorce decree to a money judgment pursuant to section 9.010 of the family code. *Id*.; *DeGroot*, 369 S.W.3d at 923; *Campbell*, 2011 WL 2436513, at *3. On this record, we conclude the trial court did not make an impermissible amendment, modification, alteration, or change to the substantive division of property in the decree. *See DeGroot*, 369 S.W.3d at 924; *see also Bivens*, 393 S.W.3d at 899 (trial court's award of monetary damages pursuant to section 9.010 did not constitute impermissible modification or clarification of divorce decree); *Kerr*, 2009 WL 3000977, at *2 (same); *Dade v. Dade*, No. 01-05-00912-CV, 2007 WL 1153053, at *3 (Tex. App.—Houston [1st Dist.] Apr. 19, 2007, no pet.) (mem. op.) (same).

We decide against Pyrtle on his third issue.

## 2. Attorney's Fees

### a. Attorney's Fees to Turner's Counsel in This Case

In his fourth issue, Pyrtle challenges the award of attorney's fees in the amount of $7,000 to Turner's counsel in this case, the classification of those attorney's fees as "additional child

–17–

support," and the withholding order respecting those attorney's fees. Specifically, in three sub-parts to that issue, Pyrtle asserts (1) "the evidence submitted to the trial court in support of the award of attorney's fees wholly fails to segregate the time and fees incurred for the differing causes of action"; (2) "even assuming the enforcement of property was properly before the court, the fees for the enforcement of property division are not enforceable as child support"; and (3) the award of attorney's fees is "unsupported by sufficient evidence in the record as required by the 'Lodestar' method for determining reasonable and/or necessary fees to be awarded."

We address the first and second sub-parts of Pyrtle's fourth issue together. According to Pyrtle, while the Texas Family Code allows for the awarding of attorney's fees as child support in "actions to enforce child support," there is no family code provision that allows for attorney's fees incurred "for the enforcement of property provisions" to be awarded and enforceable as child support. Pyrtle contends (1) Turner's petition "combin[ed] her request for relief based on allegations of violations of the Final Decree of Divorce regarding child support and medical support provisions with an alleged claim for the enforcement of the property division"; (2) "there is no basis in the facts or the law to characterize the entire award of attorney's fees as child support"; and (3) "because an award of attorney's fees for the differing causes of action is not enforceable in the same manner, Turner's counsel was required to segregate out and specify the time spent for each of the separate causes of action for which attorney's fees are being sought."

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion and that the trial court ruled on the request, objection, or motion. TEX. R. APP. P. 33.1(a). "The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal." *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990). In the case before us, the record does not show an objection was made in the trial court respecting the characterization of

attorney's fees as child support or as to the alleged absence of the segregation of tasks for which attorney's fees were sought. Consequently, we conclude Pyrtle's complaints in his first and second sub-parts of his fourth issue present nothing for this Court's review. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) ("if no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived"); *In re A.B.P.*, 291 S.W.3d 91, 99–100 (Tex. App.—Dallas 2009, no pet.) (concluding party did not preserve appellate argument that trial court erred by awarding attorney's fees in nature of child support because party did not raise argument in trial court); *In re A.R.*, 236 S.W.3d 460, 473 (Tex. App.—Dallas 2007, no pet.) (same); *cf. Aguero v. Aguero*, 225 S.W.3d 236, 238 (Tex. App.—El Paso 2006, no pet.) (concluding appellant's complaint was waived where appellate court was unable to determine from record provided whether error occurred and was properly preserved). We decide against Pyrtle on the first and second sub-parts of his fourth issue.

Next, we address the third sub-part of Pyrtle's fourth issue, which we construe as a challenge to the legal sufficiency of the evidence to support the award of attorney's fees in question. *See* TEX. R. APP. P. 38.1(f). Pyrtle argues that although Turner's counsel testified as to the number of hours spent on this case, the record contains "no testimony or evidence that the time spent was reasonable and/or necessary." Further, Pyrtle contends the record contains no evidence of the hourly rate of Turner's counsel or "any evidence that the amount was reasonable or necessary." Additionally, Pyrtle asserts in his reply brief in this Court that "[t]his evidence necessarily must be provided by counsel, not the client."

Turner responds that her counsel "presented evidence establishing the 'lodestar' figure" and "the record supports the award." Specifically, Turner asserts

> The hourly rate of Turner's counsel was established by Turner when testifying that she was charged $250.00 per hour. Turner's counsel testified as to her qualifications. She testified to the total number of hours, prior to the hearing. She testified to the total number of hours, plus the paralegal hours incurred. There

–19–

was no controverting testimony presented by Pyrtle. There was no challenge to Turner's counsel's testimony as to the reasonableness or necessity of the fees. There was no challenge to the hourly rate or the number of hours incurred.

(citations to record and authority omitted).

In support of their arguments respecting the "lodestar" method of calculating attorney's fees, both parties cite *El Apple*. *See* 370 S.W.3d at 757. As described above, under the lodestar method, "the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work." *Id*. at 760. "To establish the number of hours reasonably spent on the case, the fee application and record must include proof documenting the performance of specific tasks, the time required for those tasks, the person who performed the work, and his or her specific rate." *Id*. at 765.

In the case before us, the record shows counsel for Turner testified (1) she has been a licensed attorney in the State of Texas since 1982; (2) she "incurred a total attorney's fees in this case, prior to preparing for this last hearing, of $6,008.98"; (3) she "incurred an additional eight hours for everything that I did yesterday and today in preparing for this hearing"; (4) she is "asking the Court for a total of $8,000.00 in attorney's fees plus the $1,294.00 that my client had to pay to the Florida attorney"; and (5) her "total attorney's hours" are "twenty-four total attorney's hours" plus "ten hours of paralegal time at $100.00 an hour" and "another four hours of doing research and that type of thing." Additionally, Turner testified she agreed to pay her attorney in this case an hourly rate of $250 per hour. Even assuming without deciding that Turner's testimony can be considered for purposes of a lodestar analysis, the record in this case does not show the reasonableness of the hourly rate stated by Turner, the "performance of specific tasks," the "time required for those tasks," or the "person who performed the work." *See id*. at 765, 763. Therefore, we conclude the evidence in the record is not legally sufficient to

calculate a reasonable fee award using the lodestar method. *Id*. at 765; *see Montano*, 414 S.W.3d at 736; *Long*, 2014 WL 1643271, at *3.

We note that, unlike *El Apple*, this case does not involve a statute that specifically requires attorney's fees to be determined under the lodestar method. *See El Apple*, 370 S.W.3d at 758; Tex. Fam. Code Ann. § 9.014. Courts addressing the sufficiency of the evidence to support attorney's fees awards since *El Apple* have concluded that opinion "has no bearing on non-lodestar awards of fees." *Metroplex Mailing Servs., LLC v. RR Donnelly & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.). However, Turner does not cite, and the record does not show, expert testimony, contradicted or uncontradicted, respecting the hourly rate of Turner's counsel or the reasonableness of the attorney's fees in question. *See Tull*, 159 S.W.3d at 760 (reasonableness of attorney's fees must be supported by expert testimony); *see also Woodhaven Partners*, 422 S.W.3d at 830; *Twin City Fire Ins. Co.*, 223 S.W.3d at 770–71. Accordingly, even assuming without deciding that the lodestar method described in *El Apple* is inapplicable, we conclude the evidence in the record is legally insufficient to support the trial court's award of $7,000 in attorney's fees to Turner's counsel. *See Tull*, 159 S.W.3d at 760; *see also TeleResource Corp. v. Accor N. Am., Inc.*, No. 02-12-00475-CV, 2014 WL 975736, at *12 (Tex. App.—Fort Worth, Mar. 13, 2014, pet. filed) (concluding evidence was legally insufficient to support award of attorney's fees where record was "completely devoid of any evidence specifically detailing the reasonableness" of such fees).

In *El Apple*, upon concluding the evidence "did not provide the trial court legally sufficient evidence to calculate a reasonable fee award using the lodestar method," the supreme court reversed the court of appeals' judgment affirming the challenged attorney's fee award and remanded the case to the trial court for a "redetermination of fees." *El Apple*, 370 S.W.3d at 765; *see also Montano*, 414 S.W.3d at 736 (remanding case for redetermination of attorney's

fees where evidence was legally insufficient to support lodestar calculation); *Long*, 2014 WL 1643271, at *3 (same). The supreme court in *El Apple* stated that if the attorneys in that case did not have contemporaneous billing records documenting their time, "[n]evertheless, on remand they should reconstruct their work in the case to provide the minimum information the trial court requires to perform a meaningful review of their fee application." *El Apple*, 370 S.W.3d at 764; *see also Long*, 2014 WL 1643271, at *3. Additionally, courts in non-lodestar cases are not precluded from remanding for a new trial on attorney's fees when the evidence is legally insufficient to support such fees. *See, e.g., In re A.A.I.*, No. 12-11-00161-CV, 2012 WL 1883763, at *4 (Tex. App.—Tyler May 23, 2012, no pet.) (mem. op.) (concluding appellate court had "broad discretion" to remand for new trial on attorney's fees where evidence to support attorney's fees was legally insufficient). Accordingly, in light of our conclusion above, we reverse the trial court's award of $7,000 in attorney's fees to Turner's counsel in this case and remand this case to the trial court for a redetermination of attorney's fees to Turner's counsel consistent with this opinion. *See Montano*, 414 S.W.3d at 736; *El Apple*, 370 S.W.3d at 764–65; *Long*, 2014 WL 1643271, at *3; *In re A.A.I.*, 2012 WL 1883763, at *4.

We decide in Pyrtle's favor on the third sub-part of his fourth issue.

### b. Attorney's Fees Pertaining to Florida Foreclosure Action

In his fifth issue, Pyrtle contends the trial court abused its discretion "by awarding [Turner] a judgment for attorney's fees for Florida counsel." According to Pyrtle, "the record is totally devoid of any supporting evidence of the time, reasonableness and/or necessity for the fees expended." Therefore, Pyrtle argues, "the trial court did not have sufficient evidence before it to properly exercise its discretion."

Turner responds that she "requested the fees based upon the money she paid to stop a foreclosure, which occurred solely as the result of Pyrtle's non-compliance with the order."

–22–

According to Turner's brief in this Court, "[s]ince the award was based upon Turner's claim for damages and not based upon fees incurred in the prosecution of the petition for enforcement, she was not required to establish the reasonableness or necessity of the fees."

In his reply brief in this Court, Pyrtle asserts "Turner provides no authority that attorney's fees incurred in another state are simply a measure of damages and that she is not required to establish the reasonableness or necessity of the fees."

The Texas Supreme Court recently addressed the issue of attorney's fees as damages in *In re Nalle Plastics Family Ltd. Partnership*, 406 S.W.3d 168, 174–75 (Tex. 2013). In *Nalle*, a law firm sued a client for breach of contract, alleging failure to pay legal fees. *Id*. at 169. The jury found (1) the client breached an agreement resulting in $132,661 in damages and (2) the law firm was entitled to attorney's fees of $150,000. *Id*. The trial court rendered judgment on that verdict. *Id*. To suspend enforcement of the judgment pending appeal, the client deposited a cashier's check with the trial court. *Id*. The client's deposit included $132,661 for the breach of contract damages, as well as pre- and post-judgment interest and court costs. *Id*. The law firm complained the judgment had not been properly superseded because the client's deposit did not include attorney's fees. *Id*. The trial court agreed and ordered the client to supplement the deposit to cover the attorney's fees awarded. *Id*. The client sought relief in the Thirteenth Court of Appeals in Corpus Christi by filing a motion pursuant to Texas Rule of Appellate Procedure 24.4.(a). *Id*. (citing TEX. R. APP. P. 24.4(a)). The court of appeals denied the client's motion and the client then deposited the additional amount and sought mandamus relief in the Texas Supreme Court. *Id*. The supreme court conditionally granted the client's petition for writ of mandamus. *Id*.

The supreme court observed that section 52.006(a) of the Texas Civil Practice and Remedies Code requires judgment debtors to "post appeal bonds 'equal [to] the sum of . . . the

amount of compensatory damages awarded in the judgment[,] . . . interest for the estimated duration of the appeal[,] and . . . costs awarded in the judgment.'" *Id*. at 170 (citing TEX. CIV. PRAC. & REM. CODE § 52.006(a) (West 2008)). That court concluded in part that "attorney's fees incurred in the prosecution or defense of a claim are not compensatory damages" for purposes of that statute. *Id*. at 174. Additionally, the supreme court stated

> Nonetheless, we reject the idea that attorney's fees can never be considered compensatory damages. In this case, for example, [the law firm's] underlying breach of contract suit against [the client] involved allegations of a failure to pay attorney's fees for prior representation. While attorney's fees incurred in prosecuting this claim are not compensatory damages, the fees comprising the breach-of-contract damages are. If the underlying suit concerns a claim for attorney's fees as an element of damages, as with [the law firm's] claim for unpaid fees here, then those fees may properly be included in a judge or jury's compensatory damages award.

*Id*. at 174–75 (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 111 (party asserting legal malpractice claim may recover damages for attorney's fees paid in suit on which malpractice claim is based)); *see also Haubold v. Med. Carbon Research Inst., LLC*, No. 03–11–00115–CV, 2014 WL 1018008, at *8 (Tex. App.—Austin Mar. 14, 2014, no pet.) (mem. op.) ("full import" of supreme court's holding in *Nalle* was that while attorney's fees incurred in prosecuting the claim in that case were not compensatory damages, "the fees comprising the breach-of-contract damages are").

In the case before us, the record shows Turner claimed the Florida attorney's fees in question as an element of her damages in the underlying lawsuit. To the extent Pyrtle contends those attorney's fees are not recoverable as an element of damages, we disagree. *See In re Nalle*, 406 S.W.3d at 175; *Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 120–21; *see also Ganske v. WRS Grp., Inc.*, No. 10-06-00050-CV, 2007 WL 1147357, at *3 (Tex. App.—Waco Apr. 18, 2007, no pet.) (mem. op.) (concluding attorney's fees incurred by plaintiffs in prior

–24–

litigation resulting from defendant's alleged breach of settlement agreement could be recovered as damages in subsequent suit to enforce settlement agreement).

In support of his assertion that Turner is required to establish the reasonableness and necessity of the attorney's fees in question, Pyrtle cites two cases: *El Apple*, *see* 370 S.W.3d at 757, and *Peeples v. Peeples*, 562 S.W.2d 503 (Tex. App.—San Antonio 1978, no writ). Both of those cases involved issues pertaining to the legal sufficiency of the evidence to support the reasonableness of attorney's fees. *See El Apple*, 370 S.W.3d at 759; *Peeples*, 562 S.W.2d at 504. However, unlike the case before us, those cases did not involve attorney's fees claimed as damages. Therefore, those cases are inapposite. Pyrtle cites no authority, and we have found none, that supports his position that Turner must establish the reasonableness and necessity of the attorney's fees in question in order to recover those fees.[2] *Cf. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 120–21 (concluding attorney's fees paid in prior lawsuit could be recovered as damages in subsequent lawsuit upon showing of causation); *Ganske*, 2007 WL 1147357, at *3 (same).

---

[2] Several Texas courts of appeals have recognized the "tort of another" exception to the general rule respecting recovery of attorney's fees. *See, e.g., Dixon Fin. Servs., Ltd. v. Chang*, 325 S.W.3d 668, 678 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Lesikar v. Rappeport*, 33 S.W.3d 282, 307 (Tex. App.—Texarkana 2000, pet. denied). The "tort of another" exception is based on section 914 of the Restatement (Second) of Torts, which states as follows:

> (1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.

> (2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

RESTATEMENT (SECOND) OF TORTS § 914 (1979). Additionally, courts applying that equitable exception have concluded "[t]o obtain attorney's fees as actual damages, the plaintiff must also show that the claimed attorney's fees were reasonable and necessary." *Dixon Fin. Servs., Ltd.*, 325 S.W.3d at 678; *accord Lesikar*, 33 S.W.3d at 307. Neither the Texas Supreme Court nor this Court has expressly adopted the "tort of another" exception. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 119 (stating "we need not and do not address" whether the exception set out in section 914(2) of RESTATEMENT (SECOND) OF TORTS should be adopted as Texas law); *see also Toka Gen. Contractors v. Wm. Rigg Co.*, No. 04-12-00474-CV, 2014 WL 1390448, at *5–6 (Tex. App.—San Antonio Apr. 9, 2014, no pet.) (mem. op.) (listing Texas courts of appeals that have adopted "tort of another" exception and those that have not); *Tex. Elec.Util. Constr., Ltd. v. Infrasource Underground Constr. Servs., L.L.C.*, No.12-09-00287-CV, 2010 WL 2638066, at *2 (Tex. App.—Tyler June 30, 2010, pet. granted) (mem. op.) (same). Further, (1) neither party in this case mentions the "tort of another" exception or argues it is applicable herein and (2) to the extent Pyrtle's brief in this Court can be construed to assert the applicability of the requirements of the "tort of another" exception, Pyrtle does not explain, and the record does not show, how that exception applies in this case. *Cf. Brannan Paving GP, LLC v. Pavement Markings, Inc*., Nos. 13-11-00005-CV & 13-11-00013-CV, 2013 WL 3832717, at *12 (Tex. App.—Corpus Christi July 25, 2013, pet. filed) (even assuming without deciding that the "tort of another" exception has been adopted, "it is inapplicable to the present case because there is no underlying finding that [the party against whom recovery is sought] committed any tort against [claimant]").

The record shows Turner testified in part (1) she and Pyrtle hired a Florida attorney to try to "hold off" foreclosure respecting the marital residence; (2) she paid $1,294 to the Florida attorney hired by her and Pyrtle for services pertaining to "the foreclosure"; (3) the relief sought by her in this case includes those attorney's fees; and (4) "the only reason the home was foreclosed on was lack of payment." Turner's testimony respecting the attorney's fees in question was uncontroverted. Additionally, Pyrtle testified in part (1) the divorce decree ordered him to make the mortgage payments on the marital residence and (2) he made no mortgage payments on the marital residence after April 2009. On this record, we conclude the trial court did not abuse its discretion by awarding Turner a judgment for the Florida attorney's fees in question. *See In re Nalle*, 406 S.W.3d at 175; *Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 120–21; *Ganske*, 2007 WL 1147357, at *3.

### III. CONCLUSION

We decide in favor of Pyrtle on the third sub-part of his fourth issue. We otherwise decide Pyrtle's issues against him.

We (1) reverse the portion of the trial court's order awarding Turner's counsel in this lawsuit a judgment for attorney's fees in the amount of $7,000 and (2) remand this case to the trial court for a redetermination of attorney's fees to Turner's counsel in this lawsuit consistent with this opinion. In all other respects, we affirm the trial court's order.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

130359F.P05

–26–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF THE MARRIAGE OF ASHANTI JOHNSON PYRTLE AND FRANK PYRTLE, III AND IN THE INTEREST OF F.P., A CHILD

No. 05-13-00359-CV

On Appeal from the 256th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-08-17853.
Opinion delivered by Justice Lang,
Justices Moseley and Francis participating.

In accordance with this Court's opinion of this date, the order of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order awarding appellee Ashanti Johnson Pyrtle a/k/a Ashanti Johnson Turner's counsel in this lawsuit attorney's fees in the amount of $7,000.00. In all other respects, the trial court's order is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this Court's opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 19th day of May, 2014.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE