**Richard Douglas DeGROOT, Appellant/Cross–Appellee,**

v.

**Katherine Diane DeGROOT, Appellee/Cross–Appellant.**

**No. 05–10–01261–CV.**

Court of Appeals of Texas, Dallas.

June 13, 2012.

Rebecca Ann Tillery, Jessica Janicek, Ashley Watkins McDowell, Collin Heck Newberry, KoonsFuller, P.C., Dallas, TX, for Appellant.

Bruce K. Thomas, Law Office of Bruce K. Thomas, Dallas, TX, for Appellee.

Katherine Diane DeGroot, Plano, TX, pro se.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion by Justice FILLMORE.

In the parties' divorce decree, Katherine Diane DeGroot (Katherine) was awarded fifty percent of Richard Douglas DeGroot's (Douglas's) 401(k) plan. Douglas withdrew all funds from the 401(k) plan and, in a post-divorce enforcement order, the trial court ordered Douglas to pay Katherine $145,310.46 as her share of the 401(k) plan. Douglas appeals the order asserting it (1) substantively changed the property division in the divorce decree, (2) divested him of his separate property, and (3) awarded Katherine more than she requested in her pleadings. In two cross-issues, Katherine argues the trial court erred by ordering Douglas to make monthly payments on the judgment, rather than pay a liquidated sum, and by failing to award Katherine prejudgment and post-judgment interest. We conclude the trial court erred by failing to award Katherine post-judgment interest and by failing to specify the post-judgment interest rate applicable to the judgment. Accordingly, we remand this case to the trial court to determine and award post-judgment interest. In all other respects, we affirm the trial court's judgment.

## Background

Katherine and Douglas were divorced on July 19, 2006. In the agreed divorce decree, Katherine was awarded fifty percent of Douglas's 401(k) plan "pursuant to the terms of the Qualified Domestic Relations Order signed by the Court in this case." The trial court did not sign a Qualified Domestic Relations Order (QDRO) when it signed the divorce decree.

The parties almost immediately commenced protracted post-divorce litigation, including an arbitration and an appeal to this Court, during which the trial court did not sign a QDRO. In October 2009, the trial court heard a number of motions, including (1) petitions for enforcement filed by both Katherine and Douglas involving a number of disputes between the parties, (2) a motion for clarification filed by Katherine regarding issues relating to the marital home and whether Douglas's pension plan had been divided in the original divorce decree, and (3) a motion by Douglas to divide undivided assets. On October 30, 2009, the trial court issued a memorandum detailing its decisions on the division of the pension plan and on the issues raised by the parties in the petitions for enforcement. On December 11, 2009, the trial court signed QDROs for both the pension plan and the 401(k) plan. As relevant to this appeal, the QDRO for the 401(k) plan awarded Katherine:

> [A]n amount equal to fifty percent (50%) of [Douglas's] vested account balance under the Plan as of the most recent valuation date which occurred on or before July 19, 2006 (the "Assignment Date"). From the Assignment Date to

the date that payment is made, the amount assigned to [Katherine] will include earnings and losses.

Both Katherine and Douglas requested the trial court enter a final order and QDROs. After a hearing on February 4, 2010, the trial court signed a final order dividing the pension plan and ruling on the other issues raised in the parties' petitions for enforcement.[1] On February 8, 2010, based presumably on the trial court's rulings at the February 4 hearing, the trial court signed new QDROs for both the pension plan and the 401(k) plan. The QDRO for the 401(k) plan awarded Katherine "an amount equal to fifty percent (50%) of [Douglas's] vested account balance under the Plan as of the most recent valuation date which occurred on or before July 19, 2006." The sentence in the previous QDRO including earnings and losses in the award to Katherine was deleted by the trial court. Neither party appealed from these orders.

When Douglas's former employer received the QDROs, it informed Katherine there was no money in the 401(k) plan. Katherine then filed the petition for enforcement that is the subject of this appeal. Katherine asserted Douglas removed funds from the 401(k) plan on eleven occasions beginning on June 4, 2008 and ending on February 1, 2010.

After a hearing, the trial court found the divorce decree awarded Katherine fifty percent of the 401(k) plan and the February 8, 2010 QDRO divided the 401(k) plan "as of its value on July 19, 2006." The trial court also found the value of the 401(k) plan on July 19, 2006 was $290,620.92 and the value of Katherine's share was $145,310.46. The trial court found Douglas committed eleven violations of the decree and the order by withdraw-

ing funds from the 401(k) plan and ordered Douglas to pay Katherine an immediate payment of $50,000 followed by ninety-six monthly payments of $1,000 each. The trial court also held Douglas in contempt for each violation, ordered him confined for ninety days in the Collin County jail, and suspended the confinement on the condition that Douglas make the required monthly payments.

Douglas filed a motion for new trial asserting he withdrew only $273,876.32 from the 401(k) plan while the trial court awarded Katherine one-half of $290.620.92. Douglas argued the effect of the trial court's order was to award Katherine "approximately $8,372.30 more than [Douglas] actually received" from the 401(k) plan. Douglas asserted the trial court did not have the authority to make this substantial change to the original division of property.

### Modification of Divorce Decree

In his first issue, Douglas asserts the enforcement order made an impermissible substantive change to the property division in the divorce decree because it effectively increased Katherine's share of the estate by (1) changing the award from fifty percent of the 401(k) plan in kind to a cash award, (2) apportioning all tax liability to Douglas, and (3) requiring Douglas to pay all penalties on the withdrawals. Katherine responds that the trial court enforced, rather than clarified, the decree.

*Standard of Review and Applicable Law*

We review the trial court's ruling on a post-divorce motion for enforcement or clarification under an abuse of discretion standard. *Hollingsworth v. Hollingsworth,* 274 S.W.3d 811, 815 (Tex.App.-Dallas 2008, no pet.); *Campbell v. Campbell,* No. 01–10–00562–CV, 2011 WL 2436513, at

---

1. The record does not contain a transcript of    this hearing.

*2 (Tex.App.-Houston [1st Dist.] June 16, 2011, no pet.) (mem. op.). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). When, as in this case, a trial court makes no separate findings of fact or conclusions of law, we draw every reasonable inference supported by the record in favor of the trial court's judgment. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990) (per curiam); *Hollingsworth,* 274 S.W.3d at 815. We must affirm the trial court's judgment if it can be upheld on any legal theory that finds support in the evidence. *Worford,* 801 S.W.2d at 108; *Hollingsworth,* 274 S.W.3d at 815.

■ When a trial court renders a divorce decree, it generally retains the power to enforce the property division contained in the decree. TEX. FAM.CODE ANN. § 9.002 (West 2006). Specifically, "the court may render further orders to enforce the division of property made in the decree of divorce ... to assist in the implementation of or to clarify the prior order." *Id.* § 9.006(a) (West 2006). The trial court "may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed." *Id.* § 9.006(b). However, once the trial court's plenary power has expired, the trial court:

> may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior

order and may not alter or change the substantive division of the property.

*Id.* § 9.007(a) (West 2006); *see also DeGroot v. DeGroot,* 260 S.W.3d 658, 663 (Tex.App.-Dallas 2008, no pet.). A clarification order must be consistent with the prior judgment. *Young v. Young,* 810 S.W.2d 850, 851 (Tex.App.-Dallas 1991, writ denied); *Hinojosa v. Hinojosa,* No. 13–06–00684–CV, 2007 WL 1933586, at *2 (Tex.App.-Corpus Christi July 5, 2007, no pet.) (mem. op.). A clarification order, therefore, cannot be used to make a substantive change in a divorce decree after it becomes final. *Shanks v. Treadway,* 110 S.W.3d 444, 449 (Tex.2003).

To enforce a division in a divorce decree of specific, existing property, the trial court may order the property to be delivered. TEX. FAM.CODE ANN. § 9.009 (West 2006). However, when delivery of property awarded in the decree is no longer an adequate remedy, the trial court may render a money judgment for the damages caused by the failure to comply. *Id.* § 9.010 (West 2006).

### Cash Award

■ Douglas first argues the enforcement order was a substantive change in the division of property because it awarded Katherine her share of the 401(k) plan in cash, rather than in kind. The divorce decree awarded Katherine fifty percent of the 401(k) plan pursuant to a QDRO signed by the court and did not specify whether the award was in cash or in kind. The QDRO signed by the trial court on February 8, 2010 awarded Katherine fifty percent of the 401(k) plan as of the date of the divorce and contained no provision that Katherine's share would be affected by earnings and losses.[2]

---

2. The cases relied upon by Douglas to support his contention there was a substantive change in the division of property from an in kind to

an in cash award are, therefore, distinguishable. *See Rosenberg v. Rosenberg,* No. 01–09–00398–CV, 2010 WL 1840244, at *1 (Tex.

In the enforcement order, the trial court found the divorce decree awarded Katherine fifty percent of the 401(k) plan pursuant to the terms of a QDRO signed by the court. The trial court also found the February 8, 2010 QDRO divided the 401(k) plan pursuant to the court's "determination that [it] be divided as of its value on July 19, 2006," the value of the 401(k) plan on July 19, 2006 was $290,650.92, and Katherine's share on July 19, 2006 was $145,310.46. The trial court finally found Douglas violated the provisions of the decree and the order by withdrawing and spending funds awarded to Katherine. It then determined Douglas had the ability to partially comply with the court's prior orders and ordered Douglas to pay Katherine $50,000 and to pay the balance of Katherine's share of the 401(k) plan through monthly payments.

Douglas's liquidation of the 401(k) plan made it impossible for him to comply with the terms of the decree by delivering to Katherine fifty percent of the 401(k) plan. The trial court, therefore, had the authority to reduce the award to a money judgment pursuant to section 9.010 of the family code. *See de la Garza v. de la Garza,* 185 S.W.3d 924, 930 (Tex.App.-Dallas 2006, no pet.) ("A money judgment is a remedy available to a spouse where the other spouse does not make payments as ordered in the divorce decree."); *Campbell,* 2011 WL 2436513, at *3; *Dade v. Dade,* No. 01–05–00912–CV, 2007 WL 1153053, at *3 (Tex.App.-Houston [1st Dist.] Apr. 19, 2007, no pet.) (mem. op.) ("We hold that the trial court, after considering the evidence that Johnny had not received the

pension benefits as awarded by the divorce decree and that Thelma now had possession of those funds, acted within its discretion pursuant to Texas Family Code section 9.010 in entering a money judgment against Thelma.").

Drawing all reasonable inferences supported by the record in favor of the trial court's judgment, we conclude the trial court properly reduced the property division made in the divorce decree and the QDRO to a money judgment and did not make an impermissible substantive change to the division of property.

### Taxes and Penalties

■ Relying on *Rosenberg v. Rosenberg,* No. 01–09–00398–CV, 2010 WL 1840244 (Tex.App.-Houston [1st Dist.] May 6, 2010, no pet.) (mem. op.), Douglas also argues the enforcement order was a substantive change to the property division because it required him to bear all taxes and penalties owed on the withdrawn funds. In *Rosenberg,* the wife was awarded "$50,053.51 (in kind)" from a "brokerage account[ ], stocks, bonds, and securities, together with all dividends, splits, and other rights accrued and unpaid." *Id.* at *1. The wife filed a post-divorce application for turnover contending the husband refused to surrender the funds in cash. *Id.* The trial court granted the application and ordered the husband to turn over $50,053.51 in cash. *Id.* at *2.

The appellate court noted the wife "refused to accept anything other than a cash payment, despite the 'in kind' language in the divorce decree." *Id.* at *3. It conclud-

App.-Houston [1st Dist.] May 6, 2010, no pet.) (mem. op.) (decree awarded portion of stock account "in kind"); *In re Howell,* No. 06–09–00019–CV, 2009 WL 2025266, at *1 (Tex. App.-Texarkana July 8, 2009, no pet.) (mem. op) (QDRO stated wife's share of 401(k) plan "shall be adjusted for earnings and losses from the valuation date to the date of distribution"); *Vaughn v. Vaughn,* No. 03–04–00030–CV, 2005 WL 1115965, at *2 (Tex.App.-Austin May 12, 2005, no pet.) (memo. op.) (QDRO stated wife's share of 401(k) plan included "earnings thereon and less losses thereon").

ed that, by requiring the husband to turn over the amount in cash, the trial court "changed the division of the property because [the husband] was forced to bear all the tax burden and penalties associated with converting the assets to cash." *Id.* This, along with requiring the husband to bear the entire reduction in value of the stocks in the account, impermissibly changed the substantive disposition of property in the divorce decree. *Id.*

The facts of this case are clearly distinguishable from those in *Rosenberg.* Here, as set out above, the divorce decree and related QDRO did not award Katherine a percentage of the 401(k) plan in kind and did not order that Katherine share in any earnings and losses of the plan. Rather, Katherine was awarded fifty percent of the 401(k) plan as of the date of the divorce. The record reflects that Katherine repeatedly requested the trial court enter a QDRO. However, Douglas unilaterally liquidated the stocks in the 401(k) plan and withdrew all the funds. The trial court found the funds were withdrawn without Katherine's permission. Further, there was no evidence that Katherine would have withdrawn the funds on her own or that the parties contemplated the early withdrawal of the funds when the divorce decree was entered. We cannot conclude the trial court abused its discretion by determining Douglas should be responsible for all taxes and penalties that were owed due to his decision to withdraw funds from the 401(k) plan that had been awarded to Katherine. *See Hollingsworth,* 274 S.W.3d at 819 (trial court's clarification order did not impermissibly modify division of property by requiring husband to pay taxes, penalties, and interest owed on wife's federal income tax obligation because money owed resulted from husband's actions).

*Retroactive Effect*

Douglas finally contends the clarifying order had a retroactive effect prohibited by section 9.008(c) of the family code. *See* TEX. FAM.CODE ANN. § 9.008(c) (West 2006) ("The court may not give retroactive effect to a clarifying order."). Douglas specifically argues the trial court abused its discretion by failing to provide a reasonable time for compliance before enforcing a clarifying order by contempt or in another manner. We have concluded the trial court entered an order properly enforcing the prior division of property as made by the divorce decree and the QDRO. Accordingly, the trial court did not impermissibly give retroactive effect to a clarifying order.

We resolve Douglas's first issue against him.

**Divestiture of Separate Property**

In his second issue, Douglas argues the trial court divested him of his separate property in violation of the Texas Constitution by ordering him to pay Katherine a specific cash amount that was in excess of the amount she was awarded in the decree. To preserve error for appeal, a party must make a timely, specific objection or motion to the trial court that states the grounds for the desired ruling with sufficient specificity and complies with the rules of evidence or procedure. TEX.R.APP. P. 33.1(a). Douglas did not raise in the trial court his complaint the enforcement order divested him of his separate property. Accordingly he has not preserved this issue for appellate review. *Id.; In re W.M.O'C,* No. 04–03–00038–CV, 2004 WL 839629, at *2 (Tex. App.-San Antonio Apr. 21, 2004, no pet.) (mem. op.) (husband failed to preserve complaint that trial court's order divested him of his separate property by failing to raise it in trial court); *In re Marriage of Royal,* 107 S.W.3d 846, 852 (Tex.App.-

Amarillo 2003, no pet.) (same). We resolve Douglas's second issue against him.

## Award Exceeds Requested Relief

■ In his third issue, Douglas asserts the trial court erred by awarding Katherine more relief than she requested in her petition for enforcement. Douglas argues the amounts he withdrew from the 401(k) plan, as set out in Katherine's petition for enforcement, totaled only $273,876.32. The trial court, however, awarded Katherine fifty percent of $290,620.92, or $145,310.46. Therefore, Douglas contends, the trial court awarded Katherine $16,744.60 more than her pleadings support.[3]

■ A party may not be granted relief in the absence of pleadings to support that relief. Tex.R. Civ. P. 301; *Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex. 1983); *see also Hampden Corp. v. Remark, Inc.,* 331 S.W.3d 489, 495 (Tex.App.-Dallas 2010, pet. denied). Generally, a judgment for damages in excess of the amount sought by the pleadings is error, even if a larger award might be supported by the evidence. *Picon Transp., Inc. v. Pomerantz,* 814 S.W.2d 489, 491 (Tex. App.-Dallas 1991, writ denied); *Solomon v. Steitler,* 312 S.W.3d 46, 55 (Tex.App.-Texarkana 2010, no pet.).

Katherine's petition for enforcement alleged Douglas violated the divorce decree on eleven occasions by withdrawing funds from the 401(k) plan. The listed withdrawals total $273,876.32. Katherine requested that Douglas be ordered to deliver to Katherine her portion of the withdrawn funds. However, in the alternative, Katherine sought an order directing Douglas to pay Katherine "the replacement costs" for the property. Katherine also requested that Douglas be required to pay "any losses, costs, fees, or any loss of interest" that Katherine may have incurred as a result of Douglas's withdrawal of the funds.

Katherine pleaded for damages other than the amount actually withdrawn by Douglas from the 401(k) plan. Prior to the hearing on Katherine's petition for enforcement, Douglas did not file any special exceptions requesting Katherine state the maximum amount of damages sought. *See* Tex.R. Civ. P. 47 (stating that upon special exception, trial court shall require pleader to amend pleadings so as to specify maximum amount of damages claimed); *Burke v. Union Pac. Res. Co.,* 138 S.W.3d 46, 68 n. 4 (Tex.App.-Texarkana 2004, pet. denied) ("Because UPRC did not specifically except in writing to the failure to plead a maximum amount of the damages, any pleading defect as to the amount of the damages is not preserved for review."). Accordingly, Douglas failed to preserve his complaint that the damages awarded exceeded the relief requested by Katherine. We resolve Douglas's third issue against him.

## Payout Schedule

■ In her first cross-issue, Katherine asserts the trial court erred by ordering Douglas to make monthly payments to satisfy the award rather than entering a judgment for a liquidated sum. The trial court has broad discretion in determining the appropriate relief under section 9.010 of the family code. *McCaig v. McCaig,* No. 12-06-00374-CV, 2007 WL 1765845, at *3 (Tex.App.-Tyler June 20, 2007, pet. denied)

---

3. On appeal, Douglas contends Katherine was improperly awarded the entire difference between the value of the 401(k) plan at the time of the divorce and the amount withdrawn by Douglas while, in his motion for new trial, Douglas asserted Katherine was improperly awarded half that amount. This discrepancy, however, does not impact our analysis of Douglas's complaint on appeal.

(mem. op.). Further, it is within a trial court's discretion to order one party to pay a judgment over time to effect the division of marital property. *Hanson v. Hanson*, 672 S.W.2d 274, 277, 278–79 (Tex.App.-Houston [14th Dist.] 1984, writ dism'd); *In re Marriage of Adams*, No. 06–03–00028–CV, 2004 WL 351387, at *2 (Tex.App.-Texarkana Feb. 26, 2004, no pet.) (mem. op.).[4] We conclude the trial court did not abuse its discretion by ordering Douglas to pay the balance of the money judgment through monthly payments. We resolve Katherine's first cross-issue against her.

### Interest

■ In her second cross-issue, Katherine argues the trial court erred by failing to award prejudgment and post-judgment interest on the judgment. We review the trial court's decision regarding the assessment of prejudgment and post-judgment interest for an abuse of discretion. *Bufkin v. Bufkin*, 259 S.W.3d 343, 356 (Tex.App.-Dallas 2008, pet. denied).

■ Prejudgment interest can be awarded pursuant to an enabling statute or under general principles of equity. *Id.* at 357. Katherine relies on section 304.102 of the finance code as the statutory basis entitling her to recover prejudgment interest. Section 304.102 states, "A judgment in a wrongful death, personal injury, or property damage case earns prejudgment interest." TEX. FIN.CODE ANN. § 304.102 (West 2006). Katherine's claim does not fall within the scope of section 304.102 and, therefore, this statute does not entitle Katherine to prejudgment interest. *See Johnson & Higgins of Tex. Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530 (Tex.

1998) (applying the predecessor statute to section 304.102); *Bay Rock Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 298 S.W.3d 216, 230 (Tex.App.-San Antonio 2009, pet. denied).

■ As a general rule, a plaintiff is required to plead for prejudgment interest sought in equity as an element of damages. *Republic Nat'l Bank of Dallas v. Nw. Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 117 (Tex.1978) (op. on reh'g); *Bufkin*, 259 S.W.3d at 358. A general prayer for relief does not support a claim at common law for prejudgment interest. *Benavidez v. Isles Constr. Co.*, 726 S.W.2d 23, 25 (Tex. 1987); *Bufkin*, 259 S.W.3d at 358. In her petition for enforcement, Katherine did not specifically request prejudgment interest. Further, although Katherine requested the trial court award her the "full amount of any charges if any of any ensuing penalties, costs, and interest" and "any losses, costs, fees, or any loss of interest, that she may have incurred as a result of" Douglas's action, these requests were for any interest Katherine was required to pay, and any interest Katherine lost, due to Douglas's actions and did not constitute a plea for prejudgment interest. Finally, Katherine's general prayer for relief was insufficient to support an award of prejudgment interest. Accordingly, we conclude the trial court did not err by failing to award Katherine prejudgment interest.

■ We next turn to Katherine's contention the trial court erred by failing to award post-judgment interest. A money judgment earns post-judgment interest at a rate set by statute. *See* TEX. FIN.CODE ANN. §§ 304.001, 304.003, 304.005 (West 2006). Post-judgment interest is recovera-

---

**4.** We recognize the trial court should set the "term for payment of the cash judgment for as short a period as possible without imposing a serious hardship on the party responsible to pay the judgment." *Hanson*, 672

S.W.2d at 279. However, Katherine has complained only about the trial court's order of a payout on the money judgment, not the term of the payments.

ble even if it is not specifically awarded in the judgment. *See Attorney Gen. of Tex. v. Lee,* 92 S.W.3d 526, 528 (Tex.2002) (per curiam) (concluding that predecessor statute "does not require, as a prerequisite for accruing interest, that judgments specifically include an award of postjudgment interest"); *Hot–Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.,* 333 S.W.3d 719, 734 (Tex.App.-Houston [1st Dist.] 2010, pet. denied). We conclude Katherine is entitled to recover post-judgment interest.

We resolve Katherine's second issue in her favor to the extent she complains about the trial court's failure to award post-judgment interest. A judgment must specify the applicable post-judgment interest rate. Tex. Fin.Code Ann. § 304.001. Accordingly, we remand this case to the trial court to determine and award post-judgment interest. The remainder of the trial court's judgment is affirmed.